IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NEIL J. CONLEY,

        **Plaintiff,**

    v.

UNITED STATES OF
AMERICA, et al.,

        **Defendants.**

        Case No. 2:10-cv-444
        JUDGE SARGUS
        MAGISTRATE JUDGE KING

## OPINION AND ORDER

Presently before the Court are Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 20), Plaintiff's Motion for Summary Judgment and Renewed Motion for Summary Judgment (Docs. 8 & 14), Defendants' Cross Motion for Summary Judgment (Doc. 25), and Plaintiff's Motion for Sanctions (Doc. 27). For the reasons set forth herein, the Court **GRANTS in PART and DENIES in PART** Defendants' motion to dismiss. Further, the Court **DISMISSES** the pending motions for summary judgment without prejudice and **DENIES** Plaintiff's motion for sanctions.

## I.

Plaintiff Neil Conley ("Conley") brings the instant action against the United States of America, the Department of Defense, the United States Army, John McHugh, the Secretary of the Army, the Department of State, and Phillip J. McGuire, the Director of the Army's Crime Records Center. On January 19, 2000, Conley, then a civilian employee of the Armed Forces Recreation Center in Garmisch, Germany, was involved in an altercation during which he claims to have been attacked by a group of employees of another Armed Forces Recreation Center. (Am. Compl. ¶ 1.) Military police investigated the altercation and completed a report on the

incident. This military police report, control number 00-MPC937-0607T-5C2B, dated January

24, 2000 ("MPR"), is essentially the source of Conley's claims.

The MPR contains detailed information on the individuals who were involved in the

altercation and also provides the following narrative description summarizing the investigators'

conclusions as to what had occurred:

> AT 0030HRS, 19 JAN 00, STEWART TELEPHONICALLY NOTIFIED THE
> MP STATION OF AN ASSAULT. INVESTIGATION BY CLARK AND
> PURSER REVEALED THAT BETWEEN THE ABOVE TIMES AND ON THE
> ABOVE DATE, CONLEY CONFRONTED LARSON AND EDWARDS
> ABOUT HAVING SNOWBALLS THROWN AT HIM. CONLEY THEN
> PUSHED AND STRUCK LARSON, BREAKING LARSON'S FRONT TOOTH.
> LARSON AND EDWARDS THEN STRUCK CONLEY IN THE LIP AND
> LEFT SIDE OF THE HEAD. CONLEY, LARSON AND EDWARDS WERE
> DETAINED AND TRANSPORTED TO THE MP STATION AND ADVISED
> OF THEIR LEGAL RIGHTS, WHICH THEY WAIVED. CONLEY
> RENDERED A WRITTEN SWORN STATEMENT DENYING THROWING
> SNOWBALLS OR PUNCHES. EDWARDS RENDERED A WRITTEN
> SWORN STATEMENT, ADMITTING TO STRIKING CONLEY TWICE AND
> WITNESSING LARSON STRIKE CONLEY. EDWARDS ALSO ADMITTED
> THROWING SNOWBALLS AT CONLEY. GARMISCH POLIZEI WERE
> NOTIFIED BUT DECLINED INVESTIGATION. CONLEY WAS
> ADMINISTERED A B.A.T. WHICH RESULTED IN A 0.7% PROMILLE
> READING. LARSON WAS ADMINISTERED A B.A.T. WITH A RESULT OF
> .03% PROMILLE. THIS CASE WAS COORDINATED WITH SJA (CPT
> DENNIS) WHO OPINED THAT THERE WAS SUFFICIENT EVIDENCE TO
> TITLE CONLEY, EDWARDS AND LARSON WITH THE ABOVE
> OFFENSE.[1]

(Doc. 2, Attach. 1 at 9.) The offense described in the narrative is a violation of Section 223 of

the German Criminal Code, a crime described as "bodily injury." (Doc. 2, Attach. 1 at 1.) The

"offense code" section of the MPR also lists code "5C2B," which corresponds to the Uniform

Code of Military Justice offense of simple assault consummated with battery. (Doc. 2, Attach. 1

at 1. *See* Doc. 2, Attach. 6 at 64.) Despite what the narrative indicates, in his written statement,

Conley admitted to striking at least one of his alleged assailants. (*See* Doc. 2, Attach. 8 at 4

---

[1] The Plaintiff has made this description part of the public record in this case. Accordingly, there is no reason for the
Court to seal this information.

("I'm almost positive I hit the guy with the tooth missing.").)

A dispute over the significance of being "titled" with an offense is at the heart of many of Conley's claims. Conley does not allege that he was ever subjected to formal criminal proceedings before any German tribunal or before an Army court martial. He does, however, claim to have been suspended from his position with the recreation center for three days as a result of his involvement in the altercation. (Doc. 2, Attach. 2 at 2.) According to Conley, his titling by the MPR with the above offenses, including the German crime, was the equivalent of the Army secretly charging and convicting him of the offenses in violation of various of his constitutional rights. Moreover, as a civilian, the military could not exercise criminal jurisdiction over him. Defendants, on the other hand, contend that titling has no legal significance and is nothing more than an administrative action recording that an individual has been the subject of an investigation.

Conley claims not to have become aware of the MPR until 2007. At that time, he was in the process of applying for an internship with the Department of State and received a letter indicating that the department was considering terminating his application on suitability grounds because of the MPR and the fact that Conley did not disclose that he had been apprehended by the military police as a result of the altercation. (*See* Doc. 2, Attach. 2 at 29–30.) However, the letter, which was dated April 5, 2007, also provided Conley an opportunity to respond to the negative information upon which the proposed termination of his application was based. (*See* Doc. 2, Attach. 2 at 29.) Conley contested the suitability determination, and, by action dated June 30, 2007, he was deemed suitable for the internship position. (*See* Doc. 2, Attach. 15 at 26–27.) It is unclear from the amended complaint whether Conley ever actually worked as an intern for the Department of State.

3

After Conley learned of the existence of the MPR and of the fact that he had been "titled," he embarked on an effort to have his records amended at both the Department of Defense and the Department of State. Consistent throughout these efforts, which seemingly have culminated in this lawsuit, is Conley's insistence that being titled is the equivalent of being charged and convicted of a crime. In this suit, Conley brings a total of nine separate counts. Count I alleges that the United States Army illegally charged and convicted him of a crime in violation of Article I, Section 8, Clauses 14 and 18 of the Constitution of the United States and seeks various forms of equitable relief, including the destruction of the MPR or an injunction prohibiting the Army from disclosing this record. Count II charges that the Army failed to inform Conley of his constitutional rights when it questioned him about the altercation and seeks similar equitable relief as the first count. Count III alleges that the Army violated Conley's Fifth, Sixth, and Eight Amendment rights by secretly charging and convicting him of crimes. Count IV alleges that the Army unconstitutionally charged Conley with a German crime. Count V alleges that the Army unconstitutionally charged Conley, a civilian, with a military crime. Count VI alleges that the Army and Secretary of the Army violated the Privacy Act and requests equitable relief and damages. Count VII alleges that the Department of State violated the Privacy Act and also requests equitable relief and monetary damages. Count VIII alleges that the Army violated the Freedom of Information Act ("FOIA") and requests equitable relief. Finally, Count IX urges the Court to charge McGuire, the director of the Army's Crime Records Center, with criminal violations of the Privacy Act.

Defendants move to dismiss the amended complaint pursuant to Rule 12(b)(6) for failing to state a claim on which relief can be granted and pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. As explained below, the court will grant this motion in part.

4

**II.**

Where a motion is made by defendants pursuant to Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction, the burden is on the plaintiff to establish jurisdiction. *See Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

A Rule 12(b)(6) motion requires dismissal if the complaint fails to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it] [is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Twombly*, 550 U.S. at 55) (internal quotations omitted). Finally, "[i]n determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, *and exhibits* attached *to the* complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir. 1997)).

**III.**

**A.**

Counts I, III, IV, and V all allege that the Army's titling of Conley violated his constitutional rights or the constitution in general. Each of these claims rests on a single premise—that the titling process was the equivalent of a charge and conviction of the crimes

5

listed in the MPR. Conley's proposition that the military is generally precluded from exercising

criminal jurisdiction over civilians is correct. *See Kinsella v. United States*, 361 U.S. 234 (1960).

However, his assertion that "titling" is the equivalent of a criminal charge and conviction is not.

Because this assertion represents an incorrect legal conclusion on Conley's part, Counts I, III,

IV, and V are dismissed for failing to state a claim on which relief can be granted.

> Army regulations provide the following:

> An incident will not be reported as a founded offense unless adequately substantiated by police investigation. A person or entity will be reported as the subject of an offense on DA Form 3975 when credible information exists that the person or entity may have committed a criminal offense. The decision to title a person is an operational rather than a legal determination. The act of titling and indexing does not, in and of itself, connote any degree of guilt or innocence; but rather, ensures that information in a report of investigation can be retrieved at some future time for law enforcement and security purposes. Judicial or adverse administrative actions will not be based solely on the listing of an individual or legal entity as a subject on DA Form 3975.

*See* 32 C.F.R. § 635.18(a). Thus, on its face, § 635.18(a) contradicts Conley's position.

Accordingly, the Army's titling of Conley represented nothing more than an identification of him

as the subject of a criminal investigation. While the Army could not have subjected him to a

military prosecution for any crime he may have committed during the altercation, it is beyond

question that the Army had authority to investigate the altercation, which Conley admits

occurred on an Army installation. (*See* Am. Comp. ¶ 1.) In this regard, Army regulations

provide that "military police . . . are authorized to investigate allegations of criminal activity

occurring on [an] installation." 32 C.F.R. § 637.4(a).

In sum, Conley admits to being involved in an altercation on a military installation. That

altercation was investigated by military police, who titled Conley. As per the Army's regulation,

the only significance of that titling was that it identified Conley as an individual who may have

committed a crime and who was one of the subjects of the investigation. Conley's contention

6

that titling actually resulted in his conviction of a crime is incorrect, and Counts I, III, IV, and V are therefore dismissed for failing to state a claim upon which relief can be granted.

## B.

Count II of the amended complaint alleges that the military police failed to appraise Conley of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436 (1966) when they interrogated him concerning his role in the altercation. However, this claim also must be dismissed for failure to state a claim as a failure to provide the *Miranda* warning is not a stand-alone violation of a suspect's constitutional rights. *See, e.g. United States v. Patane*, 542 U.S. 630, 641 (2004) (plurality opinion) ("Our cases also make clear the related point that a mere failure to give *Miranda* warnings does not, by itself, violate a suspect's constitutional rights or even the *Miranda* rule."); *Chavez v. Martinez*, 538 U.S. 760, 772 (2003) (plurality opinion) ("Chavez's failure to read *Miranda* warnings to Martinez did not violate Martinez's constitutional rights and cannot be grounds for a § 1983 action."). Moreover, Count II is also barred by the six year statute of limitations applicable to civil actions against the United States. *See* 28 U.S.C. § 2401(a). While Plaintiff's other claims related to the MPR arguably did not accrue until he discovered that he had been titled in 2007, the fact that he allegedly was not given the *Miranda* warning was obvious at the time he was interrogated by the military police.

## C.

Counts VI and VII consist of claims for money damages and equitable relief against the Army and Department of State pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a. The Privacy Act establishes procedures governing the use and maintenance of "records" concerning "individuals" by agencies of the Federal Government. The term individual is defined to mean "a citizen of the United States or an alien lawfully admitted for permanent residence." 5 U.S.C. §

552a(a)(2). The term "record" is defined by the Privacy Act to mean:

> any item, collection, or grouping of information about an individual that is
> maintained by an agency, including, but not limited to, his education, financial
> transactions, medical history, and criminal or employment history and that
> contains his name, or the identifying number, symbol, or other identifying
> particular assigned to the individual, such as a finger or voice print or a
> photograph.

*Id.* § 552a(a)(4). Pursuant to the Privacy Act, agencies are generally required to grant
individuals access to records pertaining to the individuals, and permit individuals to request
amendment of records pertaining to them. *Id.* § 552a(d)(1)–(2). If a request for amendment is
made, an agency must "promptly" either amend the record, or inform the individual of its refusal
to amend the record. *Id.* § 552a(d)(2)(B). If an agency refuses to amend the record, it must
explain to the individual the reasons for its refusal. *Id.* Upon refusal of an initial request to
amend a record, the Privacy Act affords an individual the opportunity to appeal the initial
decision. *Id.* § 552a(d)(3). If the appeal is denied, the agency must permit the individual to file a
concise statement noting the individual's disagreement with the refusal to amend. *Id.* This
statement of disagreement then essentially becomes part of the record and must be disclosed by
the agency whenever the record in question is itself disclosed. *See id.* § 552a(d)(4).

The Privacy Act also establishes private causes of action for individuals in the district
courts in certain instances. For instance, an individual may file a civil action against an agency
in situations where an individual's appeal of an initial decision to amend a record is denied; in
situations where an agency refuses to disclose a record; in situations where an agency fails to
accurately maintain records "and consequently a determination is made which is adverse to the
individual;" and in situations where an agency fails to comply with the Privacy Act "in such a
way as to have an adverse effect on an individual." *Id.* § 552a(g)(1). The Privacy Act grants
district courts the authority to order agencies to amend records in accordance with the

8

individual's request. *Id.* § 552a(g)(2)(A). In cases where an agency's failure to maintain accurate records leads to an adverse determination against an individual, and in cases where an agency's failure to comply with the Privacy Act has an adverse effect on the individual, an individual can recover money damages against the United States if the individual can establish that the agency acted in an intentional or willful manner. *Id.* § 552a(g)(4). Finally, the Privacy Act includes criminal penalties. *See id.* § 552a(i).

**1.**

Turning first to Count VI, which alleges Privacy Act violations against the Army, the Court dismisses this count in part. Pursuant to Army Regulations, an individual can seek amendment of records if "the records are inaccurate as a matter of fact rather than judgment, irrelevant, untimely, or incomplete." 32 C.F.R. § 505.6(a)(2). Pursuant to § 505.6, the burden is on the individual to establish that amendment is warranted. *Id.* On August 22, 2007, Conley filed a formal request with the Army to amend the MPR by removing him "as the subject of a tilted offense." (Doc. 2, Attach. 2 at 38.) Conley supplemented this request with various letters, but it was ultimately denied on February 20, 2008. (*See* Doc. 2, Attach. 5 at 157.) Conley then appealed the denial in a letter to McGuire dated March 14, 2008. (*See* Doc. 2, Attach. 11 at 18.) On August 13, 2008, his appeal was denied by the Army's Privacy Act Review Board ("PARB"). (*See* Doc. 2, Attach. 5 at 158.) The letter denying his appeal informed him of his rights to file a statement of disagreement and to seek judicial review of the decision. (*See* Doc. 2, Attach. 5 at 158.) On January 20, 2009, Conley also filed an application for amendment with the Army Board for the Correction of Military Records ("ABCMR"), (see Doc. 2, Attach. 5 at 159), but his request for amendment was denied by the ABCMR on August 26, 2009. (*See* Doc.

2, Attach. 3 at 1.)[2]

Conley's Privacy Act claim against the Army requests both equitable relief and damages, and alone occupies over fifty of the more than 190 pages of the amended complaint. The Court, however, will construe these claims as being brought pursuant to 5 U.S.C. § 552a(g)(1)(A), seeking judicial review of the PARB's decision denying Conley's attempt to have his record amended, and pursuant to § 552a(g)(1)(C), alleging that the Army's failure to maintain an accurate record led to an adverse determination against Conley. As stated *supra*, Conley could potentially receive money damages if he can establish that the Army acted willfully or intentionally as to his claim under subsection (g)(1)(C). However, the Court holds that any possible recovery under this subsection is precluded because Conley has failed to adequately plead that an adverse determination resulted from any of the Army's alleged violations of the Privacy Act.

In his response brief, Conley argues that his amended complaint identifies five adverse determinations that have occurred allegedly because of the inaccuracies of the MPR: 1) he was suspended from his job at the Army Recreation Center; 2) that the ABCMR had labeled him a criminal under German law; 3) that the Department of State used the MPR to create other records labeling him as a criminal; 4) the Department of State added negative information on him to a personnel database; and 5) the Department of State initially denied his security clearance. (*See* Doc. 23, Attach. 2 at 48–49.) As to the first allegedly adverse determination, the Privacy Act requires actions arising under § 552a(g) to be brought within two years of the date on which the cause of action first accrued. *See* 5 U.S.C. § 552a(g)(5). As the disciplinary action occurred in 2000, Conley is prohibited from bringing a claim alleging that his suspension was the result of

---

[2]The ABCMR's decision is not relevant to Conley's Privacy Act claim as the ABCMR operates under a separate, military-specific statutory scheme. *See* 10 U.S.C. §§ 1551–1559.

errors in the MPR. Additionally, in the Court's view, none of the remaining alleged adverse determinations, to the extent they can even be considered "determinations," constitute an adverse determination because they are only adverse in light of Conley's erroneous legal conclusion concerning the nature of being titled. Additionally, the fact that the Department of State initially considered denying Conley a security clearance cannot be considered adverse due to the fact that Conley later successfully obtained the security clearance.

Turning to Conley's claim pursuant to subsection (g)(1)(A), the Court concludes that Conley has sufficiently stated a claim for review of the PARB's decision not to amend the MPR. In this regard, the Privacy Act is clear that, after an appeal challenging the denial of an attempt to amend a record is itself denied, an individual may bring an action in district court seeking de novo review of that decision. In the present case, Conley has alleged that facts contained in the MPR and other records associated with the military's investigation of the altercation are incorrect. He requested that the Army amend the record, and, when that request was denied, he appealed the decision pursuant to § 552a(d)(3). His claim is thus now properly before this Court. However, the Court's de novo review will be limited to the facts contained in the records contested by Conley. The "Privacy Act allows for amendment of factual or historical errors. It is not, however, a vehicle for amending the judgments of federal officials or [others] as those judgments are reflected in records maintained by federal agencies." *Kleiman v. Dep't of Energy*, 956 F.2d 335, 337–38 (D.C. Cir. 1992) (quotation and citation omitted). Accordingly, in determining this action upon the merits, the Court will not revisit the decision by the Army to title Conley, as this decision represents a judgment within the discretion of the Army investigators.

11

2.

The Court additionally concludes that Count VII, which alleges a Privacy Act violation

against the Department of State, must be dismissed in its entirety. The Court construes this count

to consist of a claim for review and equitable relief pursuant to subsection (g)(1)(A), and claims

pursuant to (g)(1)(C) & (D) for equitable relief and damages.

On May 26, 2008, Conley sent a letter requesting amendment of records in the

Department of State's possession. (*See* Doc. 2, Attach. 15 at 29.) According to Conley, records

related to the background check conducted for his security clearance contained erroneous

information related to the MPR. By letter dated September 16, 2008, the Department of State

indicated that it had received and was processing his request. (*See* Doc. 2, Attach. 15 at 34.)

The thrust of Conley's claim against the Department of State is that it violated the Privacy Act

by not promptly responding to his request for an amendment. However, before Conley filed his

amended complaint, by letter dated June 30, 2010, the Department of State informed Conley that

it was at least in part granting his request for an amendment. (*See* Culver Decl. Ex. 3.)

Accordingly, Count VII is moot to the extent that it requests the Court to compel the Department

of State to respond to Conley's request for an amendment. Further, to the extent Count VII is

brought pursuant to subsection (g)(1)(A), it has failed to state a claim as an action pursuant to

that subsection can only be maintained upon administrative appeal of an agency's initial

determination.

Finally, to the extent that Count VII is brought pursuant to (g)(1)(C) or (D), it also must

be dismissed as Conley has failed to allege a valid adverse determination or adverse effect. As

noted *supra*, Conley's allegation that he is labeled as a criminal is not an adverse effect as that

allegation is based on an erroneous conclusion that being titled is equivalent to being convicted

12

of a crime. As also noted *supra*, Conley actually was eventually able to receive a security clearance from the Department of State. Finally, Conley's allegations of possible harm if he were to apply for federal jobs in the future or based on the possibility that the "lies" contained in the Department of State's records will be widely disseminated are too speculative and remote to constitute actual adverse effects.

### D.

Count VIII alleges that the Army violated the FOIA, 5 U.S.C. § 552. The FOIA requires agencies to promptly make non-exempt agency records available to individuals upon request. *See* 5 U.S.C. § 552(a)(3)(A). Pursuant to the FOIA:

> On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action. In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B).

*Id.* § 552(a)(4)(B). Here, Conley challenges the Army's denial of a series of FOIA requests he made seeking copies of Army regulations related to titling. (Am. Compl. ¶¶ 661–710.) However, as is apparent from the more than 750 pages of documents attached to Conley's original complaint, Conley was able to obtain the information sought in these requests (McGuire Decl. ¶ 11(l) (listing documents provided to Conley by Army Crime Records Center)), and his challenge to the Army's denial of them is thus moot.   *See Lovell v. Alderete*, 630 F.2d 428, 430–31 (5th Cir. 1980).

However, the Court finds that Conley has sufficiently alleged a claim under the FOIA for the Army's refusal to provide him with statistics on titling. According to Conley, he sent FOIA requests to the Army requesting statistics on titling and criminal investigations on December 7, 2009 and January 2, 2010. (*See* Am. Compl. ¶¶ 713, 716.) These requests were denied essentially on the basis that the requested records do not exist. However, in his amended complaint, Conley has alleged that McGuire is in possession of these records. (Am. Compl. ¶ 718.) As the Court must accept as true Conley's factual allegations, dismissal of Count VIII, to the extent it seeks documents that are the subject of Conley's December 7, 2009 and January 2, 2010 requests, is not warranted.

### E.

Count IX is dismissed for failure to state a claim because both this Court and Conley are without authority to initiate criminal prosecutions. *See, e.g., Sahagian v. Dickey*, 646 F. Supp. 1502, 1506 (W.D. Wis. 1986).

### IV.

The Court holds that this case should proceed only as to Conley's allegation that the MPR and other records maintained by the Army contain erroneous factual information concerning the altercation that occurred in January 2000 and Conley's allegation that the Army improperly withheld certain records from him concerning titling statistics that were the subject of proper FOIA requests. At this early procedural stage of the litigation, the Court finds that consideration of the Parties' respective summary judgment motions is premature. Accordingly, they are dismissed without prejudice. Additionally, the Court denies Conley's motion for sanctions, which is seemingly based on Defendants' good faith (and in many cases well-taken) arguments that this action should be dismissed.

14

## V.

### A.

The Court concludes with a word of caution directed to Mr. Conley. In reviewing the exhibits he has attached to his complaint, the Court has become aware of the scathing and accusatory language he has on occasion directed toward various employees of the Government of the United States. (*See* Doc. 2, Attach. 15 at 35 ("You and the other 'investigators' assigned to my case are criminals for making unfounded criminal allegations against me and for the shameful taking of U.S. taxpayer money . . . .").) Mr. Conley's motion for sanctions against Defendants and their attorneys contains similar discourteous and inflammatory language. For instance, Mr. Conley referred to what the Court considers good faith arguments on the part of Defendants as "outright lies." Such baseless rhetoric will not be tolerated during the remainder of this litigation. The Court is also aware that Mr. Conley is a licensed attorney. Accordingly, he will be held to higher standard than an ordinary pro se litigant, and must henceforth present his arguments in a concise, professional, and detached manner. Any departure from these standards will also not be tolerated by this Court.

### B.

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 20) is **GRANTED in PART** and **DENIED in PART**. Counts I through V and VII and IX of the amended complaint are dismissed. Count VI, except to the extent that it seeks review pursuant to 5 U.S.C. § 552a(g)(1) of the PARB's denial of Conley's request to amend alleged factual errors in the MPR, is also dismissed. Further, Count VIII, except to the extent that it alleges that the Army is withholding the requested records on titling statistics, is dismissed. The Department of State is dismissed as a defendant in this action. Additionally,

Conley's Motion for Sanctions (Doc. 27) is **DENIED** and the Parties' respective motions for

summary judgment (Docs. 8, 14, & 25) are **DISMISSED WITHOUT PREJUDICE.** This case

shall be scheduled for a status conference within the next 30 days.

**IT IS SO ORDERED**



_____3 - 31 - 2011_____                    _____

**DATED**                                       **EDMUND A. SARGUS, JR.**
                                                **UNITED STATES DISTRICT JUDGE**

16