FILED
JAMES BONINI
CLERK
2011 NOV -3 AM 8: 12
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NEIL J. CONLEY, | : | |
| Plaintiff, | : | Case No.: 2:10 CV 444 |
| v. | : | Judge Sargus |
| THE UNITED STATES, ET AL. | : | Magistrate Judge King |
| Defendants. | : | |

## PLAINTIFF'S MOTION FOR A SUMMARY JUDGMENT ADDENDUM TO ADDRESS ADMINISTRATIVE PROCEDURE ACT CLAIMS BROUGHT IN COUNT VI OF HIS AMENDED COMPLAINT

In his Amended Complaint, Plaintiff requested the Court, pursuant to both the Privacy Act, 5 U.S.C. § 552a, and the Administrative Procedure Act, 5 U.S.C. § 706, to review the Army Board for the Correction of Military Records' ("ABCMR") decision not to amend his military records. (Doc. 17 at 159-64). In its Opinion, the Court addressed Plaintiff's request for relief under the Privacy Act. (Doc. 38 at 9-11). The Court did not address Plaintiff's request for relief under the Administrative Procedure Act. (*See generally*, Doc. 38).

The Court's Order dismissed all of Plaintiff's claims, except two: (1) whether the Army's Privacy Act Review Board failed to amend Plaintiff's military criminal records for purposes of the Privacy Act, (Doc. 38 at 11); and (2) whether the Army properly answered Plaintiff's FOIA requests for titling statistics. (*Id.* at 14). In its Order, the Court dismissed Plaintiff's claims that the ABCMR failed to amend the errors and injustices in Plaintiff's military criminal records. (*Id.* at 10 n.2). As a result of the Court limiting its review to the Department of the Army Privacy Act Review Board's ("DAPRAB") decision not to amend Plaintiff's military records, Plaintiff limited his arguments in the summary judgment pleadings to the decision of the DAPRAB not to

1

amend Plaintiff's military records. Plaintiff did address the ABCMR and his requests for relief under the Administrative Procedure Act in his Reply to his Motion for Summary Judgment. (Doc. 62 at 2). Plaintiff did not brief the issue because the Court had limited the claims that could be addressed in summary judgment to two—one being a Privacy Act claim. Therefore, Plaintiff filed his Motion for the Court to Address His Requests for Relief Under the Administrative Procedure Act. (Doc. 64). Defendants, in their Motion to Dismiss, did not address Plaintiff's claims against the ABCMR or Plaintiff's request for relief under the Administrative Procedure Act. Defendants only addressed Plaintiff's Privacy Act claims. (Doc. 20). In opposing Defendants' Motion to Dismiss, therefore, Plaintiff addressed these arguments made by Defendants, which urged the Court to dismiss Plaintiff's Privacy Act claims. (Doc. 23).

Plaintiff, therefore, did not abandon his request for relief under the Administrative Procedure Act. Rather, he was responding to Privacy Act claims based on the Defendants' arguments in their Motion to Dismiss, and, what appeared to Defendant, the Court's dismissal of all claims in Count VI, except one Privacy Act claim. Plaintiff realizes that the parties have not fully briefed the issue of whether the ABCMR's decision not to amend Plaintiff's military criminal records violated the Administrative Procedure Act. Plaintiff has attached a Memorandum in Support of his claims that the inaccuracies in his records should have been corrected by the ABCMR.

WHEREFORE, Plaintiff respectfully requests the Court to allow Plaintiff to bring this Motion, and to allow the parties to brief the issues presented in Plaintiff's Memorandum in Support of His Addendum to His Summary Judgment Motion.

2

Date: November 1, 2011                    Respectfully submitted,

*[signature]*

Neil J. Conley (*pro se*)
1900 S. Eads St., Apt. 928
Arlington, VA 22202
Phone: 1-703-200-3753
Email: conleyneilj@yahoo.com

## PLAINTIFF'S MEMORANDUM IN SUPPORT
## OF HIS SUMMARY JUDGMENT ADDENDUM

### I. INTRODUCTION

Plaintiff seeks to have errors and injustices in his military criminal records amended. Plaintiff requested the Army Board for the Correction of Military Records ("ABCMR") to amend various errors and injustices in his military criminal records. The ABCMR did not amend Plaintiff's records. The ABCMR's decision not to amend Plaintiff's military criminal records was arbitrary, capricious, and not based on substantial evidence. Plaintiff now seeks judicial review of the ABCMR's decision not to amend his military records.

### II. FACTS

On January 19, 2000, Plaintiff was attacked by at least four individuals in Garmisch-Partenkirchen, Germany. (Doc. 2, Exh. 29). During this incident, the four individuals repeatedly struck Plaintiff, and Plaintiff struck one of them in self-defense. (Doc. 2, Exh. 29). An Army lawyer "titled" Plaintiff by making a final, unchallengeable, legal determination that Plaintiff had committed the Army crime, 5C2B, simple assault consummated by a battery, and the German crime, Koeperverletzung ("bodily injury"), from the German Criminal Code. On January 24, 2000, the military police created a military police report, marked "criminal report," on the incident: MPR 00-MPC937-0607T-5C2B. (Doc. 2, Exh. 1). On February 9, 2000, Plaintiff's supervisor signed Department of the Army Form DA 4833: Commander's Report of Disciplinary or Administrative Action ("Commander's Report"). (Doc. 2, Exh. 2). In the Commander's Report, the Army recorded Plaintiff's personal information, the two crimes that an Army lawyer had determined Plaintiff committed, and the three-day suspension that Plaintiff allegedly was to receive. (Doc. 2, Exh. 2).

1

Plaintiff requested the ABCMR to amend errors and injustices in his military criminal records. (Doc. 2, Exh. 20). The ABCMR did not amend any of the errors and injustices in Plaintiff's records. (Doc. 2, Exh. 10).

### III. STANDARD OF REVIEW

"[Military review] [b]oard decisions are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303 (1983) (citations omitted); 5 U.S.C. § 706(2)(A) and (E). "The requirement that agency action not be arbitrary and capricious includes a requirement that the agency adequately explain its result." *Public Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir.1993). "At a minimum, the agency must have considered relevant data and articulated an explanation establishing a 'rational connection between the facts found and the choice made.'" *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986). "Where the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action." *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999).

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971). Deference to the ABCMR's decision is given in instances where a **soldier** is challenging the ABCMR's decision. *See, e.g., Piersall v. Winter*, 435 F.3d 319, 324 (D.C.Cir.2006) (emphasis added). Plaintiff was not a soldier.

"An agency action may be arbitrary or capricious if the agency (1) relied on factors which Congress did not intend it to consider; (2) entirely failed to consider an important aspect

2

of the problem; or (3) offered an explanation for its decision that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or agency expertise." *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43.

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolo v. Federal Maritime Comm'n,* 383 US 607, 619-20 (1966) (citation omitted). "[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *Id.* at 620 (citation omitted). "This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.*

"The Secretary of a military department may [through a military board] correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1).

## IV. ARGUMENT

### A. The ABCMR's Failure to Amend the Narrative Was Arbitrary, Capricious, and Unsupported By Substantial Evidence

The Narrative in the military police report ("MPR") at issue is factually inaccurate, and it provides an inaccurate and unjust account of the reported incident. (Doc. 2, Exh. 1, at 9, Section VII – Narrative). The Narrative was written by Sergeant First Class Ronald S. Cox, four days after the incident occurred that was the subject of the MPR. (Doc. 2, Exh. 1, at 1, Date, and 9, Section VII – Narrative). Cox did not investigate the incident. (Doc. 2, Exh. 1, at 9, Section VII – Narrative).

The Narrative is intended to provide an accurate account of the incident that is the subject of the MPR. "The narrative must answer the questions who, when, where, how, and why

3

concerning the criminal events and the individuals involved (subject, victim, witness, other persons) as well as property." (Doc. 2, Exh. 17, AR 190-45(2007), App. B, B-2(h), at 128-29). The Narrative in the MPR fails to do so. The following is the Narrative contained in the MPR:

> At 0030HRS, 19 Jan 00, Stewart telephonically notified the MP station of an assault. Investigation by Clark and Purser revealed that between the above times and on the above date, Conley confronted Larson and Edwards about having snowballs thrown at him. Conley then pushed and struck Larson, breaking Larson's front tooth. Larson and Edwards then struck Conley in the lip and left side of the head. Conley, Larson and Edwards were detained and transported to the MP station and advised of their legal rights, which they waived. Conley rendered a written sworn statement denying throwing snowballs or punches. Edwards rendered a written sworn statement, admitting to striking Conley twice and witnessing Larson strike Conley. Edwards also admitted throwing snowballs at Conley. Garmisch Polizei were notified but declined investigation. Conley was administered a B.A.T. which resulted in a 0.7% promille reading. Larson was administered a B.A.T. with a result of 0.03%. This case was coordinated with SJA (CPT Dennis) who opined that there was sufficient evidence to title Conley, Edwards and Larson with the above offense.

(Doc. 2, Exh. 1, at 9, Section VII – Narrative).

The Narrative omits facts and provides false information, thereby giving the impression that Plaintiff was the instigator who approached two individuals who had thrown snowballs at him, and proceeded to push and hit them. This is in error and is unjust. Four individuals, not two, repeatedly struck Plaintiff with snowballs. These individuals then surrounded Plaintiff. Plaintiff did not approach the individuals. After being surrounded, Plaintiff pushed off on one of the four individuals. One of the individuals then hit Plaintiff, and Plaintiff hit one of the other individuals.

Staff Sergeant Randy S. Clark ("Clark"), who was the lead investigator, interviewed all witnesses and subjects, except one. (Doc. 2, Exh. 29). Clark wrote a sworn statement detailing the events of the incident based on his investigation. *Id.* Clark's sworn statement shows that Plaintiff was repeatedly hit with snowballs, surrounded by four individuals, and swung only after being swung at. The following is Clark's sworn statement:

4

> This statement is being made in attempt to elaborate and/or clarify certain aspects of this case that may not be covered elsewhere. Between 0015 hrs. and 0025 hrs., 19 Jan 00, CONLEY was departing an AFRC party in the conference room at the Abram's complex in Garmisch, GE. Approximately five AFRC employees from Chiemsee were also ouside the conference room awaiting a taxi and throwing snowballs. The AFRC employees from Chiemsee included LARSON, PERRY, EDWARDS, AND EOFF. The Chiemsee employees either purposely or not, hit CONLEY with a snowball while he was leaving. CONLEY turned and told them to stop throwing snowballs at him, which after an exchange of words, they agreed to stop. CONLEY then turned to leave again and was once again hit by another snowball. CONLEY once again turned to confront the Chiemsee employees, at which time CONLEY and LARSON became involved in a verbal argument. CONLEY then pushed off on Edwards as EDWARDS, LARSEN, PERRY, and EOFF started surrounding him. EDWARDS struck CONLEY once in the mouth and once on the head at the same time CONLEY struck LARSON once in the mouth breaking his front tooth and once above the left eye causing it to swell and turn black and blue. LARSON was also seen by EDWARDS striking CONLEY an unknown number of times. AFRC (STEWART) Security separated the crowd and took CONLEY back inside the conference center to get him to cool off. When CONLEY again attempted to leave to return home, an unknown person struck him on the left side of the head. EDWARDS said that he was aware that CONLEY had been struck again, but he hadn't hit him that time. He further stated that it had to have been either EOFF or LARSON because at the time, he and those two were the only ones in the area. Everyone involved had been drinking (beer) that evening and admitted to doing so. From talking to all individuals involved, I believe that the AFRC Chiemsee employees were throwing snowballs at CONLEY, even after he had asked them to stop. I also believe even though no one saw EOFF throw a punch, that he was the one to strike CONLEY when he was trying to leave the second time. Both EOFF and LARSON had red marks and/or fresh cuts on their knuckles where it looked as if they'd hit something. CONLEY had his hand bandaged where LARSON's tooth had cut his knuckle. PERRY was with the Chiemsee group, but was not involved in the physical altercation at all. The Garmisch Polizei were not interested in the case because it was purely [an] American interest. STEWART claimed that the appearance of the situation was that if he didn't intervene, all four Chiemsee employees would have jumped CONLEY. I coordinated the case with SJA from Stuttgart (CPT DENNIS) who stated that there was sufficient evidence to title EDWARDS, CONLEY and LARSON as subjects.

(Doc. 2, Exh. 29).

Clark's sworn statement more completely and accurately answers the questions who, when, where, how, and why concerning the criminal events and the individuals involved

5

(subject, victim, witness, other persons). In other words, Clark's statement provides a more accurate, detailed, and fair description of the incident.

Individuals and agencies who receive a copy of the MPR will read the Narrative to obtain what they believe to be an accurate account of the incident in question. The current Narrative, however, will not provide the reader an accurate account of the incident. Most importantly, the Narrative inaccurately and unjustly indicates to the reader that Plaintiff was the instigator and aggressor. Plaintiff provided numerous examples, throughout the majority of his pleadings, of individuals from the Army and State Department who looked at the military police report with the current Narrative, and who then concluded that the Army had accused Plaintiff of, charged him with, and/or made a final determination that he committed, an Army crime and a German crime. (*See, e.g.*, Doc. 30, at 7-19).

The ABCMR's refusal to amend the Narrative was arbitrary and capricious. Plaintiff presented the ABCMR with the above evidence, showing that the Narrative was filled with errors and unjust because it provided an incomplete, inaccurate, and misleading account of the incident. (Doc. 2, Exh. 20 at 5-6, 11, with attachments; Exhibit 1). The ABCMR failed to "consider an important aspect of the problem": the omissions and errors contained in the Narrative. In addition, the ABCMR's explanation for not amending the Narrative "runs counter to the evidence" that Plaintiff brought before the ABCMR.

The ABCMR refused to amend the Narrative, stating, "The applicant has not provided sufficient documentary evidence or convincing argument to show the narrative on the subject MPR is illegal, unethical, and/or tainted due to criminal acts committed by U.S. Army personnel." (Doc. 10 at 8 ¶ 3). Although Plaintiff, whose emotional involvement in the case resulted in him describing the inaccuracies and injustices in the Narrative as illegal, criminal, and

6

unethical, he nevertheless listed the inaccuracies and omissions, called them omissions, fabricated facts, and unjust, and requested the ABCMR to amend the Narrative. The ABCMR, however, failed to address the errors and injustices in Plaintiff's military criminal records.

In addition, the ABCMR is charged with amending "errors and injustices" in Army records. 10 U.S.C. § 1552(a); AR 15-185 (March 31, 2006), Army Board for Correction of Military Records ("AR 15-185(2006)"), ¶ 1-8(b) (Doc. 2, Exh.13). The statute governing the Secretary of the Army's, through the ABCMR's, determination of whether to correct military records "authorizes him only to evaluate the 'error' or 'injustice' said to warrant correction, 10 U.S.C. § 1552(a)." *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514(D.C. Cir. 1989). The ABCMR's determination that the Narrative was not "illegal, unethical, and/or tainted due to criminal acts" was, therefore, not within the scope of the ABCMR's duties. In addition, Plaintiff was not asking the ABCMR to make a determination of illegality, ethical violations, or criminal acts with his inappropriate use of the adjectives "illegal, unethical, and criminal." Plaintiff was describing the errors and injustices that he was asking the ABCMR to amend—errors and injustices that the ABCMR did not consider.

Finally, the ABCMR's decision not to amend the Narrative was not based on substantial evidence. Rather, the evidence clearly showed that the Narrative contained numerous errors, making it an unjust representation of what happened leading up to, during, and after the incident at issue.

### B. The ABCMR's Refusal to Correct Plaintiff's Incorrect Alcohol Level in the Narrative Was Arbitrary, Capricious, and Unsupported By Substantial Evidence

The Narrative is in error because it states that Plaintiff's alcohol level was 0.7%. (Doc. 2, Exh. 1, at 9, Section VII – Narrative). This is false. Plaintiff's alcohol level was 0.03%. (Doc. 2,

7

Exh. 1, at 2, Section III – Subject, Box 16.b, Alcohol/Drug Test Results). The ABCMR admitted that the 0.7% figure was an error, calling it a "transcription error." (Doc. 2, Exh. 10 at 8 ¶ 2). The ABCMR, however, refused to amend this error, claiming that this error had "no overall impact on the MPR." *Id.*

*First*, the ABCMR is obligated by statute to correct errors and injustices in military records. The ABCMR admitted that the incorrect alcohol level was an error. Therefore, the ABCMR was obligated to amend the error. Furthermore, it is an injustice that the MPR contains the incorrect alcohol level, because it unjustly portrays Plaintiff as an extremely intoxicated individual. *Second*, despite the ABCMR's contention that the alcohol levels in the Narrative are not important, the Army investigator who wrote the Narrative did believe the alcohol levels to be important such that he included two sentences of the twelve-sentence Narrative to the subject. *Third*, if the incorrect alcohol level "has no overall impact on the MPR" then there is obviously no reason why the error should not be amended, or even redacted. *Fourth*, the ABCMR, of course, routinely corrects "transcription [typographical] errors" in military records that have no overall affect on the record. (Doc. 2, Exhs. 61, 62, 63).

Based on the foregoing, it is clear that the ABMCR's refusal to correct the error and injustice of Plaintiff's incorrect alcohol level in the Narrative was arbitrary, capricious, and not based on substantial evidence.

### C. The ABCMR's Refusal to Remove the German Crime from the MPR Was Arbitrary, Capricious, and Unsupported By Substantial Evidence

The MPR inaccurately and unjustly indicates that Plaintiff committed a German crime. (AR 29, Section II, Box 1h). The German authorities, however, refused to investigate the incident. (AR 38, Section VII, Narrative). German authorities made no determination that

8

Plaintiff committed a German crime. The MPR, therefore, inaccurately and unfairly indicates that German authorities made a final determination that Plaintiff committed a German crime.

Furthermore, the Army had neither the authority nor the competence to determine what constitutes a German crime. Defendants' attorneys have never provided a pinpoint cite that supports their contention that the Army had the authority and competence to decide Plaintiff committed a German crime.

The Court seemed to imply that the Army had the authority and competence to determine that Plaintiff committed a German crime, (Doc. 38 at 2), although the Court did not specifically address this issue when it dismissed Count IV of Plaintiff's Amended Complaint. (Doc. 38 at 5-7). The Court dismissed Count IV with three other counts of Plaintiff's Amended Complaint without addressing the specific claim in Count IV: whether the Army had the authority to determine whether Plaintiff, a U.S. civilian, committed a German/foreign crime. *Id.* In dismissing Count IV, the Court did not provide a citation to any authority that states the Army has the authority and competence to determine that persons have committed a German crime, or any foreign crime, and then to title them with a foreign crime. The Army's sphere of competence and knowledge is military offenses. Army regulations, therefore, may provide the Army the authority to decide whether individuals commit UCMJ offenses, i.e., title individuals, but Army regulations do not provide the Army with the authority to title individuals with foreign crimes. No such authority has been cited because no such authority exists.

Moreover, the Army's use of a German crime in the military police report to describe the UCMJ crime, 5C2B, with which the Army titled Plaintiff, is inaccurate and false. (AR 29, Section II, Box 1h., "Offense Description.") Army regulations require that descriptions used in military criminal reports for UCMJ offenses must be obtained from an offense code table

9

contained in Army regulations. (Doc. 2, Exh. 17, App. B-2(c)(8), at 124[1]). The pertinent table in Army Regulation 190-45 states that "simple assault consummated by a battery" is the required description for UCMJ offense 5C2B—the UCMJ crime with which the Army titled Plaintiff. (Doc. 2, Exh. 17 at 26, Table 4-1, Offense Code List and Exhibit. 26 at Table 4-2, both containing the proper "description" for offense 5C2B). "Simple assault consummated by a battery," therefore, is the factually accurate description of Army crime 5C2B. This is the description that the Army was required to use in the "Description" box of the military police report to describe the UCMJ offense, 5C2B, with which the Army titled Plaintiff. The Army's use of a German crime in the military police report to describe the UCMJ crime 5C2B is inaccurate and false. (Doc. 2, Exh. 2 at Section II, Box 1h., "Offense Description"). The German crime, therefore, should be removed, and replaced with the proper description: "simple assault consummated by a battery."

The ABCMR's decision not to amend the MPR, by removing all mention of a German crime, was arbitrary and capricious. It was arbitrary and capricious because the ABCMR "failed to consider an important aspect of the problem" by not recognizing that: (1) the Army had no statutory or regulatory authority to title anyone with a German crime; and (2) the use of a German crime in a MPR to describe a UCMJ offense was in clear violation of Army regulations. In fact, the ABCMR did not address the problem at all, or Plaintiff's claims. The ABCMR's only mention of the Army's titling of Plaintiff with a German crime was an indirect reference when it stated that the MPR showed that Plaintiff "committed the criminal offense of bodily injury under German law." (Doc. 10 at 4). Moreover, the ABCMR's decision regarding the issue of the

---

[1]. "Enter the best description of the criminal offense that took place. For example, simple assault. *This description can be obtained from the offense code table 4–1* [located in AR 190-45])." (Doc. 2, Exh. 17 (AR 190-45(2007)), App. B-2(c)(8), at 124). (emphasis added).

10

German crime was not based on substantial evidence because the ABCMR did not even address the issue.

Finally, the ABCMR's decision was arbitrary and capricious regarding the German crime issue because the ABCMR "offered an explanation for its decision that runs counter to the evidence before the agency" by not addressing the issue at all.

### D. The ABCMR's Refusal to Amend the Errors and Injustices in DA Form 4833, the Commander's Report of Disciplinary or Administrative Action, Was Arbitrary, Capricious, and Unsupported By Substantial Evidence

DA Form 4833, the Commander's Report of Disciplinary or Administrative Action ("Commander's Report"), contains the following information: (1) Plaintiff's personal information (name, SSN, date of birth, and employment grade); (2) the reference number for the military police report on the Snowball Incident: MPR 00-MPC937-0607T-5C2B; (3) the crimes with which the Army titled Plaintiff: Army crime, 5C2B, based on the UCMJ, and the German crime, GCC, Section 223, Page A-70, Bodily Injury; (4) the dates Plaintiff allegedly committed these crimes: January 19, 2000 (the date is provided twice—once for each crime); and (5) the following statement: "Individual has been counseled and warned about his behavior. He has received a three day [sic] suspension: 2, 3, [and] 4 February 2000." (Doc. 2, Exh. 2).

*First*, the Commander's report inaccurately and unfairly indicates to anyone viewing it that Plaintiff is an "offender" whom the Army determined, based on probable cause, committed the two, listed crimes. A soldier's name is placed in the "Offense(s)" box of a Commander's Report only when the Army has determined that the soldier is an "offender." (Doc. 2, Exh. 17 ¶ 4-8(a)(1)) (stating that the purpose of Commander's Report is to "[r]ecord actions taken against identified offenders" (emphasis added)). Army regulations define an "offender" as the following:

11

> Person identified and reported by law enforcement officials as the person who **committed** an offense. Determination that a person committed an offense is **based on probable cause** supported by corroborating evidence.

(Doc. 2, Exh. 17 at 137, Section II – Terms, "Offender and Exh. 26 at 47, Section II – Terms, "Offender" (emphasis added)).

Plaintiff was not an "offender." Plaintiff was a "subject" of an investigation. (Doc. 1, Section III, Box 1b, Subject's Name). Furthermore, the Army titled Plaintiff by making a determination that Plaintiff committed two crimes based on the standard of "credible information." (Doc. 2, Exh. 15 ¶ 6.3). The Army did not use the much higher evidentiary standard of "probable cause" in its determination that Plaintiff committed the two, listed crimes. There is no indication anywhere on the Commander's report that the Army "titled" Plaintiff with the two, listed crimes.

Therefore, the Commander's report is in error and is unjust because it indicates to everyone viewing it that Plaintiff is an "offender" whom the Army determined— based on probable cause—committed the two, listed crimes. Plaintiff provided numerous examples, throughout the majority of his pleadings, of individuals from the Army and State Department who received the Commander's report and concluded that the Army had accused him of, charged him with, and/or made a final determination that he committed, both a UCMJ and German crime. (*See, e.g.*, Doc. 30, at 7-19).

*Second*, the Commander's report is in error and is unjust because it indicates that the Army suspended Plaintiff for having allegedly committed the two, listed crimes. (Doc. 2, Exh. 2 at 2). Military records, however, show that Plaintiff, never served a suspension. (Doc. 2 ¶¶ 538-47). Defendants concede this point. (Doc. 20 at 7). Therefore, the Commander's report is in error and is unjust because it falsely indicates to anyone viewing it that Plaintiff served a suspension.

*Third,* a Commander's Report is not to be used for civilians. It is to be used for soldiers. (Doc. 2, Exh. 17 ¶ 4-8(c)(1)(a)-(c)) ("In the event the commander takes action against the Soldier for an offense other than the one listed on the DA Form 3975 [MPR], the revised charge or offense will be specified in the 'Remarks' section of the DA Form 4833 [Commander's Repor].") Therefore, the Army should never have placed Plaintiff's name in the Commander's Report because Plaintiff was not a soldier. By placing Plaintiff's name in a form meant only for soldiers, the Army inaccurately portrays Plaintiff as a soldier.

The only time that a Commander's Report is to be created by a supervisor for a civilian employee of the Department of Defense is in conjunction with the creation of a Central Violations Bureau Form, which "is an accountable form prepared by law enforcement personnel to report minor offenses to include violations of state traffic laws applicable to military reservations. This form is used only in conjunction with a magistrate court system." (Doc. 2, Exh. 17 ¶¶ 7-7 and 11-5 (see digital copy of exhibit)).

*Fourth,* Plaintiff incorporates by reference his arguments in the preceding section regarding the use of a German crime by the Army, which Plaintiff brought to the attention of the ABCMR. (See Document 2, Exhibit 2, at box 11a, where the Army states Plaintiff committed a German crime).

The ABCMR did not address the Commander's Report in its Discussion, other than to state, "The applicant's contention that he was not given a 3-day suspension based on there being no record of such in his pay record is not sufficient to remove his titling action." (Doc. 2, Exh. 10 at 8 ¶5). Plaintiff, however, was not trying to remove his titling action by showing the ABCMR that the Army never suspended him. Plaintiff was trying to remove the statement in the Commander's report that claimed the Army suspended Plaintiff because Plaintiff never served a

13

suspension. The ABCMR's failure to address the Commander's report was arbitrary and capricious because the ABCMR "failed to consider an important aspect of the problem," which was the errors and injustices in the Commander's Report. In addition, the ABCMR's decision regarding the alleged suspension was not based on substantial evidence because the evidence clearly showed that the statement regarding the suspension was in error and resulted in the injustice that recipients of the Commander's Report will believe Plaintiff to have served a suspension.

### E. The ABCMR's Refusal to Remove Plaintiff's Name From the MPR and DA Form 4833 Was Arbitrary, Capricious, and Unsupported By Substantial Evidence

Plaintiff also requested the ABCMR to remove his name from the MPR and DA Form 4833, claiming that the titling of him with crimes was without regulatory authority and was unconstitutional. The Court, however, ruled that the Army did have the authority to title Plaintiff with crimes. (Doc. 38).

## V. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests the Court to amend the errors and injustices in Plaintiff's records that the ABCMR did not amend.

Date: November 1, 2011

Respectfully submitted,

/s/ Neil J. Conley

Neil J. Conley (*pro se*)
1900 S. Eads St., Apt. 928
Arlington, VA 22202
Phone: 1-703-200-3753
Email: conleyneilj@yahoo.com

14